# United States Court of Appeals
## For the First Circuit

No. 14-1182

ELMER HUMBERTO PAIZ-MORALES,

Petitioner,

v.

LORETTA E. LYNCH, UNITED STATES ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Lydia M. Sanchez on brief for petitioner.
Sui P. Wong, Trial Attorney, Office of Immigration Litigation, United States Department of Justice Civil Division, with whom Joyce R. Branda, Acting Assistant Attorney General, and Anthony W. Norwood, Senior Litigation Counsel, were on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr. as the respondent.

July 29, 2015

**THOMPSON**, **Circuit Judge**.  Petitioner Elmer Humberto Paiz-Morales, a native of Guatemala who entered the United States unlawfully in 1993, appeals from the Board of Immigration Appeals's ("BIA") decision affirming an Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal.[1]  For the reasons expressed below, we deny the petition.

## I. Background

In April 1998, Paiz-Morales filed an application for asylum and withholding of removal.  In October of that year, the Immigration and Naturalization Service ("INS") served him with a Notice to Appear for a removal hearing.  When Paiz-Morales failed to appear, a removal order was issued in absentia.  In 2008, Paiz-Morales moved to reopen the order of removal, which was granted.  Paiz-Morales then requested asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and

---

[1] Paiz-Morales also contests the denial of his application for protection under the Convention Against Torture ("CAT").  Under 8 U.S.C. § 1252(d)(1), we may review a final order of removal only if the petitioner has exhausted his administrative remedies.  Paiz-Morales did not challenge the IJ's dismissal of his CAT claim before the BIA.  Aside from one sentence in his brief to the BIA, asserting that the IJ erred in denying his application for "asylum, withholding of removal and protection against torture," Paiz-Morales did not argue the merits of the CAT claim.  "[T]heories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order." Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004).  Because he did not raise this claim before the BIA, we do not have jurisdiction to review it here.  Shah v. Holder, 758 F.3d 32, 37 (1st Cir. 2014).

voluntary departure.  A hearing was held on June 11, 2012, at which Paiz-Morales testified.[2]

Paiz-Morales's persecution claim stemmed from actions related to the Guatemalan Civil War.  In particular, he testified that he left Guatemala before he turned eighteen because anti-government guerillas came to his house on several occasions to threaten him into cooperating with them.  On one occasion, according to Paiz-Morales, the guerillas held him for about a week.  Although he was released, the guerillas returned to assault him and to persuade him to drive a truck for them.  According to Paiz-Morales, the guerillas returned several times, threatened his family, and beat him.  During his last encounter with the guerillas, he received a cut on his neck.  Paiz-Morales left Guatemala for the United States in February 1993, where he lived for a time in California before moving to Massachusetts.

Following the hearing, the IJ rendered an oral decision finding Paiz-Morales to be credible, and granting him voluntary departure, but holding that he had failed to meet his burden of showing that he was entitled to asylum, withholding of removal, or CAT protection.  Specifically, the IJ found that Paiz-Morales could not establish a nexus between his past harm and a protected ground.

_____

[2] Because the IJ and the BIA found him credible, we will rely on Paiz-Morales's testimony for our recitation of the background facts.

The IJ found that Paiz-Morales had not offered any evidence that he had suffered torture at the hands of the Guatemalan government, nor that the government allowed others to torture him. Finally, the IJ found that Paiz-Morales had not met his burden of proving past persecution and did not have an objectively reasonable fear of future persecution.

Paiz-Morales appealed the IJ's decision to the BIA. He persisted in arguing that he had established a nexus between his past persecution by guerillas and a protected ground, and now also argued that he reasonably feared future persecution due to his membership in a particular social group consisting of "members that oppose gang membership." He claimed that "gang members know which persons in society are against their philosophies because gang members themselves wear certain clothing, have tattoos on their bodies and have easily identifiable signs of gang membership on their persons or bodies."

In its review, the BIA affirmed the IJ's decision, finding that Paiz-Morales had failed to demonstrate a protected ground to go along with his alleged past persecution by guerillas or (on the future persecution front) that "members that oppose gang membership" is a legally cognizable social group. Further, the BIA stated that because Paiz-Morales had failed to carry his burden of showing past persecution or a well-founded fear of future persecution (required for asylum), he also failed to meet the

higher standard required for withholding of removal. Finally, the BIA noted that Paiz-Morales did not "specifically or meaningfully challenge" the IJ's determination that he was not eligible for protection under CAT.

This petition followed.  In it, Paiz-Morales argues that he reasonably fears future persecution based on his membership in a particular social group, which he defines as "members opposed to gang membership."[3]

## II. Discussion

When the BIA "adopts portions of the IJ's findings while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit."  Renaut v. Lynch, ___ F.3d ___, 2015 WL 3486688 at *2 (1st Cir. June 3, 2015) (internal quotation marks and citation omitted).  We apply a substantial evidence standard to administrative findings of fact, and will accept them "as long as they are supported by reasonable, substantial and probative evidence on the record considered as a whole."  Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014) (internal quotation marks and citation omitted).  "[W]e will reverse only if the record is such

---

[3] Paiz-Morales states a few times in his brief to this court that the BIA erred in finding that he failed to establish a nexus between his past persecution by guerillas and a protected ground. However, he does no more than indicate what the BIA held and reiterate that guerillas previously tortured him.  Given his failure to provide any sort of developed argument, we treat the issue as waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

as to compel a reasonable factfinder to reach a contrary determination." Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). Rulings of law are reviewed de novo, "but with some deference to the agency's reasonable interpretation of statutes and regulations that fall within its sphere of authority." Id.

"An applicant for asylum must demonstrate a well-founded fear of persecution on one of five protected grounds" -- race, religion, nationality, political opinion or membership in a particular social group. Singh, 750 F.3d at 86 (internal quotation marks and citations omitted). This burden can be met with "proof of past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution." Id.

The asylum statute does not define what constitutes "membership in a particular social group." See 8 U.S.C. § 1101(a)(42). The BIA's definition has developed over time; initially it required only that members share a "common immutable characteristic." Matter of M-E-V-G, 26 I. & N. Dec. 227, 231 (BIA 2014). Amid fears that "the social group concept would virtually swallow the entire refugee definition if common characteristics, coupled with a meaningful level of harm, were all that need be shown," the BIA later refined the particular social group definition to include the concepts of "social visibility" and "particularity." Id. at 231, 232 (internal quotation marks and citation omitted).

That was the state of the definition at the time Paiz-Morales's appeal was decided. The following month, the BIA responded to confusion that had "led some to believe that literal . . . 'ocular' . . . visibility is required to make a particular social group cognizable," and renamed the "'social visibility' requirement as 'social distinction.'" Id. at 236. Paiz-Morales now argues that this "new case law" requires us to remand his case for reconsideration in light of the "clarification of the BIA's position on the social visibility requirement."

However, the plain language of Matter of M-E-V-G indicates that the "transition to the term 'social distinction' is intended to clarify the requirements announced in [two earlier cases]; it does not mark a departure from established principles." Id. at 247. Specifically, the BIA clarified that "[t]o be socially distinct, a group need not be seen by society; rather, it must be perceived as a group by society." Id. at 240. The BIA further explained that it "would reach the same result in [those earlier cases] if we were to apply the term 'social distinction' rather than 'social visibility.'" Id. at 247. The effect is no different for Paiz-Morales. The change in terminology did not depart from the BIA's prior interpretation, but merely clarified that literal ocular visibility "is not, and never has been, a prerequisite for a viable particular social group." Id. at 238. There is nothing to suggest that either the IJ or the BIA required Paiz-Morales to

- 8 -

show literal ocular visibility.  Accord Rodas-Orellana v. Holder, 780 F.3d 982, 994 (10th Cir. 2015).  We decline the petitioner's invitation to remand on that basis.

Paiz-Morales next argues that the BIA erred in finding that he failed to establish a protected ground for asylum because his proposed social group is not a legally cognizable particular social group.  "To prove persecution on account of membership in a particular social group, an alien must show at a bare minimum that [he] is a member of a legally cognizable social group." Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010).  As previously discussed, an applicant seeking asylum or withholding of removal "based on 'membership in a particular social group' must establish that the group is: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Matter of M-E-V-G, 26 I. & N. Dec. at 237.

We can pass over the first and third requirements, because even if the petitioner could show that he shared an immutable characteristic with a socially distinct group, he failed to define the purported group with the requisite particularity. The only evidence Paiz-Morales offers in the way of particularity is the statement that "gang members can easily point out those who are against their philosophies -- gang members wear certain clothing and tattoos."  That may be true, but petitioner has only

- 9 -

described a group consisting of gang members.  By his definition, anyone not wearing "certain clothing and tattoos" would be a member of his group. To meet the particularity requirement, a group must be "discrete and have definable boundaries -- it must not be amorphous, overbroad, diffuse or subjective." Id. at 239.  A group consisting of all Guatemalan citizens who do not sport gang colors and tattoos is by definition too amorphous and overbroad to be particular.

Paiz-Morales attempts to distinguish his case from that of Matter of W-G-R, 26 I. & N. Dec. 208, 221-222 (BIA 2014), in which the BIA found that a proposed group consisting of "former gang members who have renounced their gang membership" did not meet the particularity requirement because the group could include people of any sex, age, or belief about gang activities. Similarly, the group that Paiz-Morales describes would include both infants and grandmothers.  However, according to Paiz-Morales, his group is united by "a common belief of opposition to gang membership." Yet he offers no clue as to how -- aside from the lack of gang indicia -- one might draw a distinction between, say, octogenarians who oppose gang membership and teenage girls who hold no opinion on gangs whatsoever.  Although Paiz-Morales argues that he is a member of a particular group, "members opposed

to gang membership," he did not offer any evidence of the existence of this group, aside from his own assertion.[4]

In <u>Mendez-Barrera</u>, we held that a proposed group, "young women recruited by gang members who resist such recruitment," was not "sufficiently particular to be legally cognizable." 602 F.3d at 27. This "loose description" made it "virtually impossible to identify who is or is not a member," because it left open questions as to who could be considered "young," what conduct counted as "recruitment," and what degree of "resistance" must be displayed. <u>Id.</u> We stated that "[t]hese are ambiguous group characteristics, largely subjective, that fail to establish a sufficient level of particularity." <u>Id.</u> The description of Paiz-Morales's proposed group is even less specific than that in <u>Mendez-Barrera</u>. Our previous decisions have also rejected similar proposed social groups. See <u>Garcia-Callejas</u> v. <u>Holder</u>, 666 F.3d 828, 829-30 (1st Cir. 2012) (rejecting targets of gang recruitment in El Salvador as a particular social group); <u>Larios</u> v. <u>Holder</u>, 608 F.3d 105, 108-09 (1st Cir. 2010) (rejecting the proposed group "young

---

[4] In his brief submitted to this court, Paiz-Morales belatedly asserts that his argument "could be framed in terms of his political opinion." However, Paiz-Morales did not raise that argument before either the IJ or the BIA, so we will not consider it. "We have consistently held that arguments not raised before the BIA are waived due to a failure to exhaust administrative remedies." <u>Shah</u>, 758 F.3d at 37 (internal quotation marks omitted).

Guatemalan men recruited by gang members who resist such recruitment").

We do not mean to suggest "a blanket rejection of all factual scenarios involving gangs." Matter of M-E-V-G, 26 I. & N. Dec. at 251. "Social group determinations are made on a case-by-case basis." Id. But on the record of this case, where Paiz-Morales failed to offer any evidence of the existence of a legally cognizable particular social group, it is clear that the BIA's determination was supported by substantial evidence.

Finally, Paiz-Morales argues that the BIA erred in dismissing his appeal of the denial of his application for withholding of removal. We can dispense with this argument quickly. "Although the threshold of eligibility for withholding of removal is similar to the threshold for asylum, withholding requires a higher standard." Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009). "Withholding of removal requires a showing that an alien is more likely than not to face persecution on account of a protected ground." Id. (internal quotation marks omitted). Paiz-Morales did not establish that he faced persecution on account of a legally cognizable social group. A petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal.

For the reasons discussed, we deny the petition for judicial review.