# United States Court of Appeals
## For the First Circuit

No. 17-1803

ANA MARINA PEREZ-RABANALES,

Petitioner,

v.

JEFFERSON B. SESSIONS, III, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya, and Kayatta,
Circuit Judges.

Kevin P. MacMurray, Daniel W. Chin, and MacMurray & Associates on brief for petitioner.

Chad A. Readler, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Shelley R. Goad, Assistant Director, Office of Immigration Litigation, and Carmel A. Morgan, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

January 26, 2018

**SELYA**, **Circuit Judge**.  The petitioner, Ana Marina Perez-Rabanales, a Guatemalan national, seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying her application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  We conclude that the petitioner has failed to show that the claimed persecution took place on account of her membership in a cognizable social group.  Based largely on that conclusion, we hold that the BIA's final order is in accordance with law and is supported by substantial evidence in the record.  Consequently, we deny the petition.

## I.  BACKGROUND

The petitioner resided in Guatemala until April of 2014, when she attempted to enter the United States.  She claims that in 2003, a man named Rodrigo De Leon grabbed her as she was walking home from church and raped her.  She did not contact the police because she believed that women have no rights in Guatemala and that the police would be unwilling to protect her.  To avoid future encounters with De Leon, she altered her route to church.  Notwithstanding her precautions, De Leon tracked her down and raped her a second time.

The petitioner became pregnant as a result of this second rape.  She told her mother about both the pregnancy and De Leon's assaults.  Soon thereafter, De Leon left Guatemala.  But as word

spread that the petitioner was carrying De Leon's child, she began to experience abuse from De Leon's family. Three of his relatives beat her with sticks and threatened her life. De Leon was married at the time of the rapes, and she believed that his relatives, upon learning of her pregnancy, blamed her for "wreck[ing] his home."

The petitioner gave birth to her son, Juanfer Perez, in March of 2004. At an unspecified later date in 2007, she was attacked by De Leon's sister-in-law, who pulled her hair, threw her to the ground, and struck her with a rock. An x-ray taken at a local hospital revealed that blood had pooled in the petitioner's brain as a result of the attack. Although she seldom went outdoors following this incident for fear of another confrontation, De Leon's relatives continued to scream at her from outside her home.

The petitioner subsequently met Raoul Mauricio, with whom she lived and had a child (Astrid Mauricio). De Leon's family continued harassing her, and the harassment persisted after Raoul Mauricio emigrated to the United States in 2010. The petitioner recalls that members of De Leon's family told her that "now that you are alone, we can deal with you, bitch."

On or about April 26, 2014, the petitioner, accompanied by her minor daughter Astrid Mauricio, crossed the border into Texas and entered the United States without inspection. She was detained upon entry and placed in removal proceedings. Conceding

removability, she cross-applied for asylum, withholding of removal, and CAT protection. In support, she claimed both past persecution and a well-founded fear of future persecution on account of her membership in a particular social group.

At the conclusion of her removal hearing, the immigration judge (IJ) found the petitioner credible, but denied relief. The IJ concluded that the petitioner was ineligible for either asylum or withholding of removal because she was unable to show that the harm she suffered in Guatemala was on account of a statutorily protected ground. The IJ also concluded that the petitioner did not qualify for CAT protection because she had not established a likelihood that, if repatriated, she would be subjected to torture with the consent, acquiescence, or willful blindness of a public official. Following the petitioner's unsuccessful appeal to the BIA, she prosecuted this petition for judicial review.

## II. ANALYSIS

Judicial review in immigration cases typically focuses on the final decision of the BIA. See Cabrera v. Lynch, 805 F.3d 391, 393 (1st Cir. 2015). "But where, as here, the BIA accepts the IJ's findings and reasoning yet adds its own gloss, we review the two decisions as a unit." Id. (quoting Moreno v. Holder, 749 F.3d 40, 43 (1st Cir. 2014)). We proceed accordingly.

In the course of our review, "[c]laims of legal error engender de novo review, with some deference to the agency's expertise in interpreting both the statutes that govern its operations and its own implementing regulations." Id. Factual findings are reviewed for substantial evidence. See López-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009). "Under this highly deferential standard, we must accept the BIA's findings so long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Thus, the agency's factual findings will not be disturbed unless "the record is such as to compel a reasonable factfinder to reach a contrary determination." Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).

To establish her eligibility for asylum, an alien must show that she is a refugee as defined by the Immigration and Nationality Act. See 8 U.S.C. § 1101 (a)(42)(A); see also Villa-Londono v. Holder, 600 F.3d 21, 24 (1st Cir. 2010). "A refugee is a person who cannot or will not return to her home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(A)).

Here, the petitioner pins her hopes on the fourth of these five statutorily protected grounds: membership in a particular social group. The Immigration and Nationality Act does not define what constitutes membership in a particular social group. Decisional law has filled this void: to make out a cognizable social group, an alien must show that the group's members share a common immutable characteristic, see Paiz-Morales v. Lynch, 795 F.3d 238, 243 (1st Cir. 2015); that the group can be defined with particularity, see id.; and that the group is socially distinct, see id.; see also Matter of M-E-V-G-, 26 I. & N. Dec. 227, 232 (BIA 2014). Our cases have consistently employed this tripartite formulation in passing upon the cognizability of social groups. See, e.g., Granada-Rubio v. Lynch, 814 F.3d 35, 38 (1st Cir. 2016); Paiz-Morales, 795 F.3d at 243-44; Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010).

In the case at hand, the petitioner's claims are premised on her membership in a social group that she describes as constituting "Guatemalan women who try to escape systemic and severe violence but who are unable to receive official protection." Both the IJ and the BIA concluded that this proffered social group was not legally cognizable. As we explain below, this conclusion is in accordance with law and is supported by substantial evidence.

The BIA has defined a common, immutable characteristic as "one that the members of the group either cannot change, or

should not be required to change because it is fundamental to their individual identities or consciences." Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985). We assume, favorably to the petitioner, that she has demonstrated a common, immutable characteristic amongst members of her proffered social group: gender. This assumption appears warranted since the BIA has recognized gender as sufficient for this purpose. See Matter of A-R-C-G-, 26 I. & N. Dec. 388, 392 (BIA 2014).

Even so, we are mindful that "the social group concept would virtually swallow the entire refugee definition if common characteristics, coupled with a meaningful level of harm, were all that need be shown." Paiz-Morales, 795 F.3d at 243 (quoting Matter of M-E-V-G-, 26 I. & N. Dec. at 231). To avoid such overbreadth, a cognizable social group must also satisfy the particularity and social distinctiveness requirements. See id. The petitioner's proffered social group fails to satisfy either of these prerequisites.

The particularity requirement seeks to determine whether a proffered social group can be described in a manner sufficiently unique to ensure that the group would be recognized in its own society as a discrete class of persons. See Matter of S-E-G-, 24 I. & N. Dec. 579, 584 (BIA 2008). If the description of the group is so amorphous as to preclude a rational determination of group membership, the particularity requirement is not met. See id. It

follows, we think, that a proffered social group is not sufficiently particular if it is broad to the point of indeterminacy. See Tay-Chan v. Holder, 699 F.3d 107, 112 (1st Cir. 2012) (holding that a group consisting of "victims of gang threats and possible extortion" was overly broad and, thus, insufficiently particular). The petitioner's proffered social group potentially encompasses all women in Guatemala, as any woman in Guatemala may fall victim to violence and find herself unable to obtain official protection. The amorphous nature of this sprawling group precludes determinacy and renders the group insufficiently particular.

Nor is this the only shortcoming in the petitioner's attempt to construct a cognizable social group. The social distinctiveness requirement demands that the proffered group be perceived as a group by the society in which it exists. See Vega-Ayala v. Lynch, 833 F.3d 34, 39-40 (1st Cir. 2016). This element turns on "whether members of a particular group 'are set apart, or distinct, from other persons within the society in some significant way.'" Id. at 39 (quoting Granada-Rubio, 814 F.3d at 39). The test is whether, "if the common, immutable characteristic were known, those with the characteristic in the society in question would be meaningfully distinguished from those who do not have it." Id. at 39-40.

The petitioner argues that her status as a woman who feels unable to seek official recourse placed her in a socially visible group within her society in Guatemala. She relies on Matter of A-R-C-G- to buttress her proposition that a particular social group may consist of women subject to violence. See, Matter of A-R-C-G-, 26 I. & N. Dec. at 390-94 (holding that "married women in Guatemala who are unable to leave their relationship" may constitute a cognizable social group). The BIA rejected this attempted comparison, finding that the petitioner's proffered social group — unlike the social group recognized in Matter of A-R-C-G- — lacks any socially visible characteristics independent of the harm of which the petitioner complains.

We agree. Comparing the petitioner's proffered social group to the social group found cognizable in Matter of A-R-C-G- is like comparing carrots to cucumbers. The alien in Matter of A-R-C-G- was able to show that the group in which she claimed membership — "married women in Guatemala who are unable to leave their relationship" — was viewed by her society as a discrete class of persons. Id. The members' status as women forced to remain in their marriages left them uniquely vulnerable to persecution — a fact that was easily recognizable by Guatemalan society. See id. at 394 (noting that Guatemala's "culture of machismo and family violence" and a consistent failure on the part of law enforcement

- 9 -

to protect married women from these offenses contribute significantly to the social distinctiveness of the group).

Here — unlike in Matter of A-R-C-G- — the petitioner's proffered social group is defined by the persecution of its members. This distinction has decretory significance. A sufficiently distinct social group must exist independent of the persecution claimed to have been suffered by the alien and must have existed before the alleged persecution began. See Burbiene v. Holder, 568 F.3d 251, 254 (1st Cir. 2009); Rreshpja v. Gonzales, 420 F.3d 551, 556 (6th Cir. 2005); Matter of W-G-R-, 26 I. & N. Dec. 208, 215 (BIA 2014); see also Escobar v. Holder, 657 F.3d 537, 545 (7th Cir. 2011) (noting that "[w]here a proposed group is defined only by the characteristic that it is persecuted, it does not qualify as a 'social group'"). The petitioner has offered no evidence to show that the members of her proffered social group ("Guatemalan women who try to escape systemic and severe violence but who are unable to receive official protection") — unlike the members of the social group recognized in Matter of A-R-C-G- — were viewed by Guatemalan society as either distinct or uniquely vulnerable prior to the commission of the acts of persecution of which they complain. Consequently, the petitioner's proffered social group fails to satisfy the social distinctiveness requirement.

That ends this aspect of the matter. The petitioner's failure to satisfy both the particularity and the social distinctiveness requirements defeats her attempt to qualify as a refugee through membership in a particular social group.[1]

As an attempted fallback, the petitioner argues that the agency erred in failing to analyze her claim of past persecution. The Immigration and Nationality Act, though, does not provide a pathway to asylum for all individuals who have suffered harm severe enough to rise to the level of persecution. See Sugiarto v. Holder, 586 F.3d 90, 95 (1st Cir. 2009). To warrant such relief, the claimed harm must have been causally connected to one of the five statutorily protected grounds. See Lopez Perez v. Holder, 587 F.3d 456, 462 (1st Cir. 2009). Absent such a nexus, a free-floating finding of persecution is not itself sufficient to pave the way for asylum. See Sugiarto, 586 F.3d at 95. Because the IJ and the BIA supportably found that the petitioner failed to establish a nexus between the claimed harm and a statutorily protected ground, there was no error in forgoing an analysis of past persecution.

---

[1] In an effort to change the trajectory of the debate, the petitioner suggests that she may qualify for relief as a member of a different social group: "victims of a crime." Because the petitioner proffers this alternative description for the first time in this court, we lack jurisdiction to consider it. See Villa-Londono, 600 F.3d at 25.

- 11 -

So, too, the IJ and the BIA did not err in declining to reach the issue of humanitarian parole. Since humanitarian parole requires a showing of past persecution on account of a statutorily protected ground, see Ordonez-Quino v. Holder, 760 F.3d 80, 96 (1st Cir. 2014), no separate analysis was needed to warrant the dismissal of this claim.

Having disposed of the petitioner's application for asylum, we need not linger long over her application for withholding of removal. "[C]laims for withholding of removal require a higher level of proof than claims for asylum. It follows that if a claim for asylum is rejected on the merits, a counterpart claim for withholding of removal must necessarily fail." Villa-Londono, 600 F.3d at 24 n.1; accord Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). Because the petitioner's asylum claim fails on its merits, her counterpart claim for withholding of removal fails as well.

Finally, both the IJ and the BIA rejected the petitioner's claim for CAT protection, concluding that she had not shown a likelihood that she would be subject to torture upon her return to Guatemala at the instigation or with the acquiescence of a government official. See 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a). In this court, the petitioner has not advanced any developed argumentation relating to this claim. Consequently, we deem it abandoned. See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010).

- 12 -

**III. CONCLUSION**

We need go no further. Although the petitioner presents a sympathetic case, it is not a case that demonstrates her entitlement to the relief that she seeks. Accordingly, we deny the petition for judicial review.


**So Ordered**.