**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2222
_____

JONATAN ROZCO-PEREZ
a/k/a Yonatan David Orozco-Perez,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent
_____

PETITION FOR REVIEW OF A FINAL ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A201-036-108)
Immigration Judge: Alice S. Hartye
_____

Submitted under Third Circuit LAR 34.1(a)
February 3, 2020
_____

Before: SHWARTZ, SCIRICA, and RENDELL, <u>Circuit Judges</u>.

(Filed: February 4, 2020)
_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Yonatan Orozco-Perez,[1] a native and citizen of Guatemala, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") denying his application for withholding of removal and protection under the Convention Against Torture ("CAT"). Because the IJ and the BIA correctly concluded that Orozco-Perez failed to show he was entitled to relief, we will deny his petition.

I

Orozco-Perez and his family are Evangelical Christians. While in Guatemala, Orozco-Perez attended weekly church services and visited homes in the area to preach and invite people to join the church. Much of this preaching was against membership in the local gang. Orozco-Perez stated that this evangelizing and gang opposition drew negative attention from gang members.

Orozco-Perez experienced gang recruitment and witnessed gang violence and extortion. For example, after he witnessed a gang robbery and murder, members of the gang appeared at Orozco-Perez's home, threatened to kill him, and shot rounds into the family house. Orozco-Perez and his brother received medical attention from firefighters. They were scared, but physically unharmed. In addition, police responded to Orozco-

---

[1] The correct spelling of the petitioner's last name is Orozco-Perez, though it appears in the record and in a portion of the briefing as "Rozco-Perez."

2

Perez's home after the shooting, but no arrests were made because Orozco-Perez and his brother were unable to identify the perpetrators.

At age fourteen, in 2010, Orozco-Perez entered the United States without documentation to avoid the gang violence, but in 2011, he was ordered removed to Guatemala. After returning to Guatemala, Orozco-Perez resumed preaching against gangs. While Orozco-Perez was preaching, gang members occasionally threatened or detained him and others because, as Orozco-Perez explained, the gang "felt [the evangelists] were invading their territory." A.R. 108. In addition, because the church tried to guide young people away from gangs and toward the church, church members "became the enemies of the gangs." A.R. 142. Orozco-Perez also experienced two robberies, unrelated to his preaching, which he did not report to the police.

In 2013, Orozco-Perez returned to the United States. In 2018, he was apprehended by Immigration and Customs Enforcement and his removal order was reinstated. Based on a credible fear interview, an asylum officer opined that Orozco-Perez had a reasonable fear of future torture in Guatemala and his case was referred to an IJ for further proceedings.

Orozco-Perez applied for withholding of removal and CAT protection. The IJ found Orozco-Perez is not entitled to withholding of removal because: (1) his alleged persecutors were motivated not by a protected ground, but by their intent to commit and conceal their crimes and protect their territory; (2) the evidence does not show his religion was a central reason for the claimed harm; (3) he has not demonstrated he is part

3

of a particular social group ("PSG"), as his proposed group, "[y]oung members of the Evangelical church" that evangelize in gang-controlled neighborhoods, is defined by its vulnerability to crime, which captures a "broad swatch of society," A.R. 56; (4) the shooting into his home and the two robberies do not constitute "persecution," A.R. 56; and (5) the police responded to the shooting at his home and the Guatemalan government is taking steps to combat gang-related crime and has had "tangible" results, A.R. 57.

The IJ also determined that Orozco-Perez was not entitled to CAT relief because: (1) the two robberies and assaults he experienced do not constitute past torture, as they did not occur with governmental consent or acquiescence; and (2) the country conditions evidence did not demonstrate that it is more likely than not he would be harmed if removed, as the evidence does not show the gangs have "so infiltrated the government" that they would acquiesce in torture. A.R. 61.

The BIA affirmed the IJ's decision without issuing a separate opinion. Orozo-Perez petitions for review.[2]

---

[2] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). See Garcia v. Att'y Gen., 665 F.3d 496, 502 n.4 (3d Cir. 2011). We review legal questions de novo and the BIA's and IJ's factual findings under an "extraordinarily deferential standard," where "findings of fact will be upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 502 (internal quotation marks, citation, and alteration omitted). We may decline to uphold factual findings "only if the evidence compels a contrary conclusion." Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) (internal quotation marks omitted); see Kibinda v. Att'y Gen., 477 F.3d 113, 123 (3d Cir. 2007) (applying "compel a contrary conclusion" standard to CAT claim). Where, as here, the BIA adopts the IJ decision without writing its own opinion, we review the IJ decision as

4

II

We first consider Orozco-Perez's petition to review the IJ's denial of his request for withholding of removal.[3]  Under the Immigration and Nationality Act, an alien whose removal order has been reinstated may apply for withholding of removal.  8 C.F.R. § 208.31(e).  The Act requires withholding of removal where "the Attorney General decides that the alien's life or freedom would be threatened in [the] country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," in other words, because of a protected ground.  8 U.S.C. § 1231(b)(3)(A); see also 8 C.F.R. § 208.16(b).  To meet this standard, the alien must show that (1) he suffered past persecution, which creates a rebuttable presumption of future persecution or (2) he has a well-founded fear of future persecution, which is shown if there is a reasonable possibility he will suffer persecution if removed.  8 C.F.R. § 1208.13(b)(2).

Orozco-Perez argues that he was persecuted based on his membership in the PSG of "[y]oung members of Evangelical churches in Guatemala who engage in

---

the final agency determination.  Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003).

[3] The Government argues that Orozco-Perez waived any challenge to the agency's determination about the cognizability of his proposed PSG for withholding of removal and waived any challenge to the denial of his application for CAT relief.  However, Orozco-Perez contested the IJ's assessment of the nexus between persecution and protected ground, as well as the IJ's analysis of the Guatemalan's government's ability and willingness to control the gangs, before the BIA.  Therefore, issues related to Orozco-Perez's PSG and his CAT claims are preserved.

evangelization in neighborhoods controlled by gangs."[4]  A.R. 119.  Even assuming that

this group would qualify as a PSG, there is substantial evidence supporting the IJ's

<hr />

[4]  One protected ground upon which withholding of removal for persecution can be granted is membership in a PSG.  8 U.S.C § 1231(b)(3).  A protected PSG is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."  S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018) (quoting In re M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014)).

The IJ correctly concluded that Orozco-Perez's proposed PSG of "[y]oung members of the Evangelical church . . . that evangelize in neighborhoods controlled by gangs" is not a protected PSG.  AR 56.  Even assuming the IJ correctly found that past preaching is an "immutable" characteristic because a past experience cannot be changed, the group is neither particular, nor does the evidence show it is socially distinct.  Orozco-Perez did not present evidence demonstrating that the group has "'discrete and . . . definable boundaries' that are not 'amorphous, overbroad, diffuse, or subjective.'"  S.E.R.L., 894 F.3d at 552 (quoting M-E-V-G-, 26 I. & N. Dec. at 239).  In addition, he has not shown that Guatemalan society perceives young Christian Evangelicals as distinct.

Further, the group he describes is similar to groups that resist gang membership.  Such groups lack both particularity and social distinction, and thus do not meet the definition of a PSG.  See, e.g., Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (concluding that proposed group of individuals opposed to gang membership lacked particularity because "[a] group consisting of all Guatemalan citizens who do not sport gang colors and tattoos is by definition too amorphous and overbroad to be particular"); Rodas-Orellana v. Holder, 780 F.3d 982, 991-93 (10th Cir. 2015) (holding that proposed group of "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs" lacked social distinction).  Likewise, groups defined by a qualifier like "youth" in this context are still inadequate to meet the particularity and social distinction requirements.  See, e.g., Zaldana Menijar v. Lynch, 812 F.3d 491, 498-99 (6th Cir. 2015) ("'El Salvadoran male youth, who were forced to actively participate in violent gang activities for the majority of their youth and who refused to comply with demands to show their loyalty through increasing violence' . . . lacked social distinction . . . ." (citation omitted)); Mayorga-Vidal v. Holder, 675 F.3d 9, 15 (1st Cir. 2012) ("[W]e have repeatedly deferred to the BIA's reasonable determination that the features encompassing 'youths who resist gang recruitment' are simply too subjective and open-ended to describe a sufficiently particular, legally cognizable social group." (citation omitted)); Mendez-Barrera v. Holder, 602 F.3d 21, 25, 27 (1st Cir. 2010) (determining that "young [El Salvadoran]

6

conclusion that the motive for the harm Orozco-Perez faced in the past, and may possibly face in the future, is not on account of his membership in this group. INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992) (requiring that the persecutor's motive arise from the alien's protected trait).

Orozco-Perez must establish a nexus between the alleged persecution and a protected ground. To satisfy this nexus requirement, an applicant must show that the protected ground is one central reason for the persecution. Ndayshimiye v. Att'y Gen., 557 F.3d 124, 129 (3d Cir. 2009). "[A] persecutor may have more than one central motivation for his or her actions; whether one of those central reasons is more or less important than another is irrelevant." Id. Orozco-Perez argues that the IJ applied the wrong standard to assess the nexus element by improperly establishing a hierarchy of his persecutors' motivations. However, the IJ's opinion suggests no such hierarchy. Rather, the IJ received the evidence and concluded that the motive for the gang's actions toward Orozco-Perez and church members was crime and protection of their territory.

Substantial evidence supports the IJ's determination that crime, greed, intimidation, and revenge were the basis for Orozco-Perez's treatment, and not his proselytizing for the Evangelical church. Orozco-Perez himself noted that the gang's

women recruited by gang members who resist such recruitment" lacked particularity because "[t]here are, for example, questions about who may be considered 'young,' the type of conduct that may be considered 'recruit[ment],' and the degree to which a person must display 'resist[ance]'" (first, third, and fourth alterations in original)). Therefore, the IJ did not err in finding that Orozco-Perez's proposed group is not a PSG.

7

focus was on "control [of] the area," A.R. 500, recruitment, and extortion. Testimony from Orozco-Perez, affidavits from his brothers, letters from friends and family submitted on his behalf, and articles in the record about persecution of Christians demonstrate that the gang targeted individuals or organizations that were a threat to the gang's livelihood, and that hostility and violence directed at the Evangelical church and its members, including Orozco-Perez, was based on the church's opposition to gangs and efforts to weaken the gangs, not religion. Furthermore, he stated that he had not experienced threats because of his religion, was not assaulted while doing church visits or evangelizing, was not "singled out because of [his] religion," and that "it was common for the gangs to recruit boys his age . . . and to threaten or beat them when they refused." A.R. 141. Indeed, Orozco-Perez and his brother stated that they were targeted with threats and violence after the gang's efforts to recruit them failed. Therefore, substantial evidence supports the IJ's conclusion that the harm Orozco-Perez experienced and his fears are based on the gang's criminal goals and not due to his membership in a PSG. Thus, the IJ did not err in denying Orozco-Perez's withholding of removal.

III

We next consider Orozco-Perez's application for CAT relief.  To qualify for

protection under the CAT, the "burden of proof is on the applicant . . . to establish that it

is more likely than not that he or she would be tortured if removed to the proposed

country of removal,"[5]  Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017) (alteration

in original) (quoting 8 C.F.R. § 1208.16(c)(2)); Kibinda v. Att'y Gen., 477 F.3d 113, 123

(3d Cir. 2007), "with the consent or acquiescence of a public official or person acting in

an official capacity,"  8 C.F.R. § 208.18(a)(1).[6]

The IJ correctly denied CAT relief.  First, the assaults, robberies, and intimidation

he experienced do not constitute "extreme[,] . . . cruel and inhuman treatment," 8 C.F.R.

§ 208.18(a)(2).  Second, substantial evidence supports the IJ's conclusion that Orozco-

Perez did not show that he would suffer harm "by or at the instigation of or with the

---

[5] The "likelihood of torture" factor poses two questions: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?"  Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010).  The first question is factual, id., and requires the IJ to review "the evidence and determine[] future events more likely than not to occur," Myrie, 855 F.3d at 516.  The second part of the inquiry is a legal question, requiring a determination as to whether those events meet the legal definition of torture.  Kaplun, 602 F.3d at 271.  Accordingly, we review the first determination for substantial evidence, and the second determination de novo.  Here, we focus our analysis on the second inquiry, as Orozco-Perez specifically challenges the IJ's determination about government acquiescence to torture.

[6] "For an act to constitute torture under the [CAT] . . . it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions."  Myrie, 855 F.3d at 515 (citing Auguste v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005)).

9

consent or acquiescence of a public official" if he returns to Guatemala. 8 C.F.R. § 208.18(a)(1). The Guatemalan government has undertaken efforts to confront gang violence and intimidation, and substantial evidence indicates government opposition to the gangs. Further, there is evidence to support the IJ's conclusion that the government's actions have produced tangible results. Even Orozco-Perez identified two instances in which government actors provided him and his family assistance after an interaction with the gang, describing medical attention from firefighters after Orozco-Perez and his brother witnessed a gang murder, and the police response to the report of the shooting at his home. Moreover, other than his statements concerning police indifference to gangs, the record does not show that gangs are intertwined with law enforcement or the government, or that any harm directed at Orozco-Perez would be done with the consent or acquiescence of the government or a public official. Therefore, the IJ did not err in concluding that Orozco-Perez failed to demonstrate a clear probability of future torture if returned to Guatemala.

IV

For these reasons, we will deny the petition for review.

10