# United States Court of Appeals
## For the First Circuit

Nos. 24-1112,
      24-1260

JOSE RENE ALVAREZ MENDOZA,

Petitioner,

v.

PAMELA BONDI,[*]
Attorney General,

Respondent.

PETITIONS FOR REVIEW OF ORDERS
OF THE BOARD OF IMMIGRATION APPEALS

Before

Montecalvo, Howard, and Aframe,
Circuit Judges.

Jacob Tuttle Newman, with whom Andrew S. Dulberg, Caroline N. Patterson, and Wilmer Cutler Pickering Hale and Dorr LLP were on brief, for the petitioner.

Colin J. Tucker, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Sabatino F. Leo, Assistant Director, Office of Immigration Litigation, were on brief, for the respondent.

Oren Nimni on brief for Rights Behind Bars, amicus curiae.

---

[*]     Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland as Respondent.

March 31, 2025

**AFRAME**, **Circuit Judge**.  Jose Rene Alvarez Mendoza, a Salvadoran national, has filed two petitions for review of decisions of the Board of Immigration Appeals ("BIA").  The first challenges the BIA's January 2024 decision upholding the denial by an Immigration Judge ("IJ") of his applications for withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A), and protection under the regulations implementing the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c)-1208.18.  The second challenges the BIA's March 2024 denial of his motion to reopen his administrative proceedings to seek either a continuance or administrative closure of those proceedings while U.S. Citizenship and Immigration Services ("USCIS") adjudicates his pending Form I-918 Petition for U Nonimmigrant Status ("U visa").  Because the BIA's reasons for denying the petitioner's application for withholding of removal are unclear and may have been tainted by legal error, we grant the first petition, remand for further proceedings, and dismiss the second petition as moot given our disposition of the first.

**I.**

In May 2022, the Department of Homeland Security ("DHS") initiated removal proceedings against the petitioner for, among other things, entering the United States without inspection by an immigration officer.  8 U.S.C. § 1182(a)(6)(A)(i).  Two months later, an immigration court found petitioner removable and

- 3 -

designated El Salvador as the country to which he should be removed. The petitioner then applied for asylum, withholding of removal under the INA, and protection under the CAT, which in due course led to an evidentiary hearing before an IJ. We limit our focus to the petitioner's application for withholding of removal under the INA, which grounds our disposition.

"To obtain relief in the form of withholding of removal, an [applicant] must establish a clear probability that, if returned to his homeland, he will be persecuted on account of a statutorily protected ground." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023) (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021) (alteration in original)). "[M]embership in a particular social group" ("PSG") is a statutorily protected ground. Ferreira v. Garland, 97 F.4th 36, 46 (1st Cir. 2024) (quoting 8 U.S.C. § 1231(b)(3)(A)). But for a PSG to be legally cognizable, the applicant "must establish that the group is: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (quoting Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)). Here, the petitioner alleged that there is a clear probability that he would be persecuted in El Salvador on account of, among other things, his membership in a legally

- 4 -

cognizable PSG defined as "victims of gangs who give statements to police in pending criminal proceedings."

In support of his persecution allegation, the petitioner introduced, among other things, evidence that, in 2020, a member of MS-13, a powerful Salvadoran gang, had stabbed and severely wounded him in Chelsea, Massachusetts; that the petitioner's cooperation assisted the local police in arresting his assailant; that the assailant, after being released on bond, twice confronted the petitioner and warned him against further cooperation in the unresolved case against him; and that the assailant threatened to kill the petitioner in whatever country he was located if the petitioner were to appear in court and testify against him. The assailant was deported, presumably to El Salvador, before the criminal case against him was resolved, and the petitioner has not testified against him.

In support of his assertion that his proposed PSG was legally cognizable, the petitioner relied upon a Salvadoran law, Decreto No. 1029/2006, Ley Especial para la Protección de Víctimas y Testigos ["Special Law for Victim and Witness Protection"], (May 11, 2006) ("Decreto No. 1029/2006"), enacted to protect "victims, witnesses and others who are involved in the investigation of crime or in judicial proceedings." Henriquez-Rivas v. Holder, 707 F.3d 1081, 1092 n.15 (9th Cir. 2013) (en banc) (quoting the English translation of Decreto No. 1029/2006 (elided material restored)).

The petitioner also relied upon Henriquez-Rivas, in which the Ninth Circuit, sitting en banc, took judicial notice of and discussed Decreto No. 1029/2006 to hold that the BIA incorrectly rejected a proposed PSG defined as "people who testified against [Salvadoran] gang members."  See 707 F.3d at 1092 & n.15.  The petitioner highlighted the following statement by the Ninth Circuit: "It is difficult to imagine better evidence that a society recognizes a particular class of individuals as uniquely vulnerable, because of their group perception by gang members, than that a special witness protection law has been tailored to its characteristics."  Id. at 1092; see also Espinoza-Ochoa, 89 F.4th at 234 (observing that the existence of laws designed to protect members of a proposed PSG can support a finding that the PSG is socially distinct).

In a written decision issued on October 25, 2022, the IJ denied the petitioner relief, including on his application for withholding of removal under the INA.  The IJ found, among other things, that the petitioner's proposed PSG was not cognizable because it lacked both particularity and social distinction.  The IJ also found that, even if the petitioner's PSG were cognizable, the petitioner was not a member of it.  Finally, the IJ found that the petitioner had failed to establish a sufficient likelihood that he would be harmed if he were removed to El Salvador.  The petitioner appealed to the BIA which, in a decision dated April 21, 2023, vacated and remanded to the IJ for further factual

- 6 -

findings and a reassessment of the record evidence regarding (1) the particularity and social distinction of the petitioner's proposed PSG, and (2) his membership in it.

On May 30, 2023, the IJ issued a second written decision addressing the matters noted by the BIA. Again, the IJ found that the petitioner's proposed PSG was not cognizable because it lacked both particularity and social distinction. As to particularity, the IJ began by observing that a sufficiently particular PSG must have characteristics that "provide a clear benchmark for determining who falls within the group." The IJ then stated, in three different ways, that the petitioner's proposed PSG lacked such a benchmark because he had not adduced evidence showing "how Salvadoran society would be able to point him out" as a member of the group.

As to social distinction, the IJ stated that this same inability of Salvadoran society to identify the petitioner as a member of his proposed PSG was fatal to his argument: "As similarly discussed above [in connection with the particularity requirement], it is unclear how Salvadoran society could even measure or identify the victim who gave statements to police in pending criminal proceedings in the United States." The IJ also summarily rejected the petitioner's argument in support of social distinction based on Decreto No. 1029/2006 and Henriquez-Rivas

because "it is First Circuit, not Ninth Circuit precedential case law, that is binding here . . . ."

Again, the petitioner appealed to the BIA. This time, the BIA dismissed the appeal. The BIA did not explicitly discuss the IJ's particularity finding, although it twice cited approvingly to the page of the IJ's written decision containing it. Rather, the BIA explicitly affirmed on the ground that the IJ properly found that the petitioner's proposed PSG was not socially distinct. We reproduce the BIA's analysis in its entirety:

> The [petitioner] next challenges the [IJ's] determination that his proposed particular social group, "victims of gangs who give statements to police in pending criminal proceedings," is not cognizable. The [IJ], however, found without error that the [petitioner's] proposed group is not socially distinct. [Citing to the pages of the IJ's decision containing its particularity and social distinction findings]. The [petitioner] argues on appeal that the existence of laws intended to protect victims and witnesses of crime in El Salvador demonstrates the group is a distinct social group. Although this evidence demonstrates certain witnesses may need protection against retaliation and there are legal means for such protection, this evidence does not speak to whether all individuals who give statements in any criminal proceeding creates a socially distinct group, as found by the [IJ]. [Again citing to the pages of the IJ's decision containing its particularity and social distinction findings]. Moreover, although gang members make up part of the society in question and may hold influence in certain areas, the [petitioner] has not persuasively shown that their views are shared by society in general. See Carvalho-Frois v. Holder, 667

- 8 -

> F.3d 69, 73 (1st Cir. 2012) (explaining group
> defined as "witnesses to a serious crime whom
> the Brazilian government is unwilling or
> unable to protect" was not socially distinct
> when only known to the alleged persecutors).
> In the absence of a cognizable particular
> social group, the [petitioner] is unable to
> establish his eligibility for withholding of
> removal under the INA.

(Some citations omitted).

The petitioner thereafter sought review in this Court.

## II.

The petitioner asserts that the BIA committed two legal errors in rejecting his application for withholding of removal for failure to establish that his proposed PSG is socially distinct in El Salvador. First, the petitioner argues that the BIA erred in endorsing the IJ's social distinction analysis by describing it as being "without error." The BIA's endorsement of the IJ's social distinction analysis was erroneous, the petitioner maintains, because the IJ improperly applied an "ocular visibility" standard in concluding that the proposed PSG was not socially distinct. Second, the petitioner contends that the BIA prejudicially misdescribed the scope of his proposed PSG while conducting its social distinction analysis. The parties agree that we have jurisdiction to review these claims of legal error and that our review, which encompasses the IJ's rulings to the extent that the BIA incorporated them into its own analysis, Ferreira, 97 F.4th at 45-46, is de novo, see Alvizures-Gomes v. Lynch, 830 F.3d 49, 52

- 9 -

(1st Cir. 2016) (observing that this Court applies de novo review to claims of legal error by the BIA).[1]

We agree with the petitioner's first argument: that, in confirming that the IJ's analysis was "without error," the BIA may have endorsed the IJ's use of a legally erroneous "ocular visibility" test in evaluating whether the petitioner's proposed PSG was socially distinct within Salvadoran society. As this Court has previously explained, the BIA's definition of the statutory phrase "membership in a particular social group," 8 U.S.C. § 1231(b)(3)(A), "has developed over time," Paiz-Morales, 795 F.3d at 243. At first, the BIA "required only that members share a 'common immutable characteristic.'" Id. (quoting Matter of M-E-V-G-, 26 I. & N. Dec. at 231). But, amid concerns that the social group concept would become too expansive "'if common characteristics, coupled with a meaningful level of harm, were all that need be shown,' the BIA later refined the particular social

---

[1] The government argues that the petitioner failed to exhaust his ocular visibility argument by failing to raise it first with the BIA. We disagree. In his appeal to the BIA challenging the IJ's particularity and social distinction findings, the petitioner both cited to the correct legal standard and claimed that the IJ committed several legal errors. The petitioner's ocular visibility argument is at most an additional argument in support of that claim. See Yee v. City of Escondido, Cal. 503 U.S. 519, 534-35 (1992) (observing that, on appeal, a litigant is not limited to the precise arguments made below in support of a claim). Moreover, as we shall explain, our decision to remand the petitioner's claim for withholding of removal under the INA is grounded in concerns beyond whether the agency used an ocular visibility analysis.

group definition to include the concepts of 'social visibility' and 'particularity.'" Id. (quoting Matter of M-E-V-G-, 26 I. & N. Dec. at 231, 232).

The BIA's embrace of the term "social visibility," however, led some courts to erroneously equate "social visibility" with "ocular visibility" -- that is, a societal ability to place a person within or outside the proposed PSG based upon mere observation. See Matter of M-E-V-G-, 26 I. & N. Dec. at 236 ("Contrary to our intent, the term 'social visibility' has led some to believe that literal, that is, 'ocular' or 'on-sight,' visibility is required to make a particular social group cognizable under the [INA]."); see also Espinoza-Ochoa, 89 F.4th at 231 n.4 (noting that a proffered PSG lacking such ocular visibility, such as a group defined by sexual orientation, may nonetheless be cognizable); Paiz-Morales, 795 F.3d at 243 (similar, noting that "literal ocular visibility 'is not, and never has been, a prerequisite for a viable particular social group'" (quoting Matter of M-E-V-G-, 26 I. & N. Dec. at 238)).

Thus, in 2014, the BIA sought to resolve any confusion by substituting the term "social distinction" for "social visibility" in its test defining the necessary elements of a cognizable PSG. See Matter of M-E-V-G-, 26 I. & N. Dec. at 237; see also Espinoza-Ochoa, 89 F.4th at 231 n.4; Paiz-Morales, 795 F.3d at 243. As the BIA put it: "To be socially distinct, a group

need not be seen by society; rather, it must be perceived as a group by society. Society can consider persons to comprise a group without being able to identify the group's members on sight." Matter of M-E-V-G-, 26 I. & N. Dec. at 240 (citation omitted).

We are concerned that the agency's denial of the petitioner's application for withholding of removal under the INA may have been affected by a misunderstanding that social distinction requires ocular visibility. As previously noted, the BIA confirmed the IJ's social distinction analysis by stating that the IJ "found without error that the [petitioner's proposed PSG] is not socially distinct." But the IJ's social distinction analysis was anchored on the following statement: "As similarly discussed above, it is unclear how Salvadoran society could even measure or identify the victim who gave statements to police in pending criminal proceedings in the United States." But this sentence, when read together with the three preceding sentences "discussed above" in the IJ's particularity analysis, see supra at 7, is at best confusing and at worst may express a rejection of the petitioner's argument based on Salvadoran society's inability to place individuals inside or outside the petitioner's proposed PSG based on mere observation. Such a rejection amounts to application of the discredited ocular visibility standard.

We are less certain about the petitioner's second argument: that the BIA's rejection of his social distinction

analysis was marred by a material misunderstanding of the limited scope of the petitioner's proposed PSG. Resolution of this issue turns on construing the following sentence of the BIA's opinion: "Although this evidence [i.e., evidence of the existence of Decreto No. 1029/2006, which the petitioner adduced in support of his social distinction argument] demonstrates certain witnesses may need protection against retaliation and there are legal means for such protection, this evidence does not speak to whether all individuals who give statements in any criminal proceeding creates a socially distinct group, as found by the [IJ]." (Emphasis added).[2]

The parties appear to agree that the underlined portion of the sentence was a mistaken (because it was overly broad) description of the petitioner's proposed PSG. But we are not so

_____

[2] The BIA followed up this sentence with a second sentence that could be read to present a second reason for rejecting the petitioner's social distinction argument: "Moreover, although gang members make up part of the society in question and may hold influence in certain areas, the [petitioner] has not persuasively shown that their views are shared by society in general." (Citation omitted). The use of the word "[m]oreover" could, in theory, connote that the BIA intended this sentence to state an additional reason for rejecting the petitioner's argument based on Decreto No. 1029/2006. More likely, though, given that it is not substantively responsive to the argument, this second sentence was intended to reject an argument that the petitioner made in his brief to the BIA but has not renewed in the petition before us: that the IJ failed to understand that members of MS-13 constitute Salvadoran society for purposes of analyzing the social distinction of the petitioner's proposed PSG because of their prevalence and influence throughout the country.

certain. While the parties may be correct, we think that the BIA instead may have been drawing attention to the fact that, unlike the petitioner in Henriquez-Rivas, who testified against gang members who killed her father in the presence of those gang members in open court in El Salvador, 707 F.3d at 1092, the petitioner's cooperation here involved only giving a statement to the police (i.e., not testifying) abroad (i.e., in the United States). Or alternatively, the BIA may have been suggesting that Decreto No. 1029/2006, which by its terms protects all victims and witnesses of all crimes, is not particularly probative of the social distinction of the petitioner's proposed PSG, which is limited to victims of gangs who cooperate with the police.

We need not resolve this ambiguity. As we have explained, the combined effect of the IJ's decision and the BIA opinion, which twice endorses the IJ decision and twice cites approvingly to its particularity and social distinction findings, leaves us concerned that the agency's rejection of the petitioner's application for withholding of removal was influenced by improper ocular-visibility reasoning. Moreover, the ambiguous sentence addressing the petitioner's PSG argument based on Decreto No. 1029/2006, regardless of whether it contained an additional legal error, does not supply us with adequate reassurance that, notwithstanding our concern about ocular visibility, the BIA rejected the petitioner's application on supportable grounds. We

therefore send this case back to the agency for clarification.
For as the Supreme Court has stated:

> If [an] administrative action is to be tested
> by the basis upon which it purports to rest,
> that basis must be set forth with such clarity
> as to be understandable.  It will not do for
> a court to be compelled to guess at the theory
> underlying the agency's action; nor can a
> court be expected to chisel that which must be
> precise from what the agency has left vague
> and indecisive.  In other words, [w]e must
> know what a decision means before the duty
> becomes ours to say whether it is right or
> wrong.

SEC v. Chenery Corp, 332 U.S. 194, 196-97 (1947) (citation and
internal quotation marks omitted).

Finally, we wish to be clear that, in sending this case
back to the BIA, we do not imply any view about how the petitioner's
application for withholding of removal ultimately ought to be
decided.  This case is different from Henriquez-Rivas in at least
two significant respects: (1) the criminal proceedings in which
the petitioner cooperated took place in the United States, and not
El Salvador; and (2) the petitioner did not testify.  Also, we
call the parties' attention to a recent BIA decision, not cited by
the agency or the government, with obvious potential relevance.
See Matter of H-L-S-A-, 28 I. & N. Dec. 228 (B.I.A. 2021).

In Matter of H-L-S-A-, the BIA rejected a proposed
social group titled "prosecutorial witnesses" advanced by a
Salvadoran national who, while imprisoned in the United States,

- 15 -

met with prosecutors and agents of the Federal Bureau of Investigation; discussed his knowledge of gang activities in a federal detention center; and participated in a photo array in which he identified persons he knew or suspected of being gang members. See id. at 229-30. After a thorough examination of relevant circuit authority (including Henriquez-Rivas), the BIA concluded:

> [C]ooperation with law enforcement may satisfy the requirements of immutability, particularity, and social distinction and establish a valid particular social group under the [INA] if the cooperation is public in nature, particularly where testimony was given in public court proceedings, and the evidence in the record reflects that the society in question recognizes and provides protection for such cooperation.

Id. at 237. The applicant's proposed PSG failed under this test because his cooperation was not public. See id. Also, the BIA held that (1) the potential for individual retaliation by gang members the applicant had informed upon did not qualify as persecution based on his membership in his proposed PSG, see id. at 238, and (2) the world-wide scope of the applicant's PSG rendered it insufficiently particular, see id.[3]

---

[3] This circuit has not yet considered Matter of H-L-S-A-, so we highlight it solely for purposes of bringing it to the attention of the agency and the parties.

For the reasons stated, we grant the petitioner's first petition for review and remand for reconsideration of his application for withholding of removal under the INA.

**III.**

We conclude by addressing two additional issues raised by the briefing.

First, because our grant of the petition for review on withholding of removal under the INA requires the BIA to reopen the petitioner's administrative proceedings, and because a reopening of administrative proceedings is the end goal of the second petition, we deny the second petition as moot. In doing so, we clarify that, on remand, the petitioner may raise before the BIA or an IJ (if there is a further remand) a motion for either a continuance or an administrative closure of proceedings while USCIS adjudicates his pending petition for a U visa. If the BIA were to fail to apply its own precedents and the analysis prescribed in Matter of Sanchez Sosa, 25 I. & N. Dec. 807, 812-13 (B.I.A. 2012), such a decision would run the risk of being an abuse of discretion. See Benitez v. Wilkinson, 987 F.3d 46, 52 (1st Cir. 2021).

Second, we do not reach the question whether legal error tainted the BIA's decision to uphold the denial of the petitioner's application for relief under regulations implementing the CAT. The fact that the petitioner's assailant was in the United States

- 17 -

at the time the BIA issued its decision informed its conclusion that the petitioner had not shown it more likely than not that he would be tortured if removed to El Salvador. But the record reveals that the assailant has since been deported, presumably to El Salvador. Because of this material change in circumstances, and because the administrative proceedings are to be reopened for reconsideration of the petitioner's application for withholding of removal under the INA and/or a continuance or administrative closure of proceedings while the USCIS evaluates his application for a U visa, the petitioner may renew his application for relief under the CAT on remand. If he does so, the BIA or an IJ (if there is a further remand) should evaluate it based on an updated record if additional evidence is presented.[4]

**IV.**

For the reasons stated, we **grant** the petition for review challenging the BIA's dismissal of the petitioner's applications for withholding of removal under the INA and protection under the regulations implementing the CAT (No. 24-1112) and **remand** to the

---

[4]   We also acknowledge the government's argument that we would be without jurisdiction to review an agency determination that a noncitizen's proposed PSG lacks the requisite social distinction if the noncitizen sought to challenge the determination without alleging that it was tainted by legal error. We decline to reach this argument, however, because the government concedes the reviewability of the petitioner's arguments that the agency's decision not to recognize his proposed PSG was tainted by legal error.

- 18 -

BIA for further proceedings consistent with this opinion.  On remand, the petitioner may renew these applications.  We also **dismiss,** as mooted by our disposition of No. 24-1112, the petition for review challenging the BIA's denial of the petitioner's motion to reopen his administrative proceedings to seek either a continuance or administrative closure of those proceedings (No. 24-1260).  The petitioner may move for the requested continuance or administrative closure in the reopened proceedings.

**So ordered**.