# United States Court of Appeals
## For the First Circuit

No. 23-1885

FRANKLIN MANAEN RAMOS-GUTIERREZ,

Petitioner,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lynch, and Montecalvo,
Circuit Judges.

Robert M. Warren on brief for petitioner.
Lindsay Corliss, Trial Attorney, Office of Immigration
Litigation, Civil Division, Brian M. Boynton, Principal Deputy
Assistant Attorney General, Civil Division, and John S. Hogan,
Assistant Director, Office of Immigration Litigation, U.S.
Department of Justice, on brief for respondent.

July 18, 2024

**LYNCH**, <u>Circuit Judge</u>. Franklin Manaen Ramos-Gutierrez of El Salvador petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") order denying his application for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A), as well as relief under the Convention Against Torture ("CAT"), 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); <u>see also</u> Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U. N. T. S. 114.

The BIA upheld the IJ's denial of relief, finding, inter alia, that the petitioner had failed to establish the requirements for asylum (and accordingly for withholding of removal) in that (1) the petitioner's claimed particular social groups -- "young person who has been beaten and threatened by gangs" and "young individual in the country who's been targeted for gang recruitment" -- were not cognizable and (2) the petitioner failed to demonstrate the requisite nexus between the harm alleged and either a cognizable particular social group or a political opinion.

Substantial evidence supports the IJ's factual findings, and the BIA committed no errors of law as to several grounds each independently sufficient to deny relief. We deny the petition for review.

The petitioner entered the United States in 2013 and was served with a Notice to Appear on April 27, 2013, charging him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). The petitioner filed an application for asylum, withholding of removal, and protection under CAT on August 27, 2013. At an initial hearing before an IJ on the same day, the petitioner appeared with counsel and conceded his removability. The petitioner later appeared before the IJ on December 18, 2018, represented by counsel, where he testified as the sole witness. The IJ found the petitioner to be credible.[1]

We describe the facts as found by the IJ after a hearing on December 18, 2018, including from the petitioner's testimony before the IJ. At the time of the hearing, the petitioner was a twenty-four-year-old native and citizen of El Salvador. He completed up to the ninth grade in school, and he married in El Salvador, where his wife, parents, and four brothers live.[2]

---

[1] At the time that the petitioner entered the United States, he represented that he was a juvenile, but the Department of Homeland Security later discovered that he was twenty-three years old. The IJ noted that "the department did raise some issues with respect to the [petitioner's] statements to the border patrol upon arrival," but the IJ "[did] not believe that these are sufficient to warrant an adverse credibility finding[.]"

[2] The petitioner has a four-year-old child who was born in the United States and is a citizen.

While living in Chalatenango, El Salvador before 2013, the petitioner experienced harassment from members of a gang called "Pandilla Sin Ley," which was part of the larger "MS and 18th Street" gang.[3] The gang harassing the petitioner consisted of several people, and one of the primary harassers was "Melvin." The gang "was threatening everyone and everyone knew about them," and "[e]veryone in the village where the [petitioner] lived knew about them."

The harassment began in 2009 when the petitioner was fifteen and still in school in the La Lomita area where the petitioner and his family lived. Petitioner was asked to join the gang, he refused, and gang members beat him. The petitioner told his parents about the incident, and the family went to the police; however, the police took no notice. Members of the gang beat up the petitioner a second and then a third time, when the petitioner was hit with a pistol. Following the third beating, the petitioner's older brother again went to the police. The police searched for and found Melvin, but did not arrest him. The police gave the petitioner "an appointment to go in front of [a] judge on May 12, 2010." During the court hearing, Melvin "admitted what happened" and "left the court laughing." The judge "said that she was going to order Melvin" to pay the petitioner fifty dollars.

---

[3] "Sin Ley" is Spanish for "lawless."

Melvin never paid. The gang "tried to beat up" the petitioner again after this hearing, but he moved an hour and a half away to his grandmother's house. While he was living with his grandmother, members of the group came looking for him at his mother's residence.

In 2013, three years after he moved to live with his grandmother, the petitioner left El Salvador and entered the United States without inspection. At the time of the hearing before the IJ, the petitioner communicated with his mother via phone every three days. For a time, gang members were asking about him every three days. The petitioner believed that the last time the gang had asked about the petitioner was about a year ago. The petitioner has been able to access Melvin's Facebook page and find pictures of him with weapons.[4]

The IJ denied the petitioner's applications and ordered the petitioner removed to El Salvador. The IJ found that the petitioner did not meet the criteria for asylum for several reasons, including that the petitioner had not claimed membership in any "valid particular social group." The IJ determined that

---

[4] The record is unclear as to when exactly the petitioner accessed Melvin's Facebook page, although it seems to have been close to the 2018 removal hearing: the petitioner testified, "[t]hese are photographs that we found in Facebook where he displays all his guns and weapons" and "[t]he reason why I used [these photos] and I take this is because the weapon or the gun that is in the photographs is similar to the ones he used when he attacked me."

- 5 -

the petitioner's first claimed particular social group, a "person or young person who has been beaten and threaten[ed] by the gangs," was not a valid particular social group because it was "impermissibly circular" and "defined by the harm which is included in its definition." As to the petitioner's second claimed particular social group, "a young individual in the country who's been targeted for gang recruitment," the IJ "relie[d] on Matter of S-E-G-[, 24 I. & N. Dec. 579 (B.I.A. 2008)] and [Matter of] E-A-G-[, 24 I. & N. Dec. 591 (B.I.A. 2008)] to find" that the group was "too amorphous" and "not valid enumerated grounds."

The IJ further concluded that the petitioner had failed to demonstrate the required nexus between the gang's actions and the petitioner's claimed particular social groups or any political opinion. First, the IJ determined that "[w]ith respect to the political opinion that the gangs are quasi government force[s] which prevent the [petitioner] from living in peace in opposition to them, the Court will once again rel[y] on S-E-G and E-A-G to find that this is not a valid political opinion." The IJ found that the gang's targeting of the petitioner "was a criminal act in which [the gang] attempted to coerce through threats and extortion the [petitioner] to join the gang," and that the gang "did this to everyone else in the vicinity and that everyone knew about it." "Thus, the [petitioner] was not targeted by the gangs due to any particular characteristics or any membership in any groups or any

political [opinions] that he had." Additionally, the IJ noted that "the Attorney General's decision in Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018) stands for the proposition that generalized violence in the context of domestic violence and gang violence would generally not form a basis for asylum in the United States." The IJ concluded that "[t]he facts of this case clearly follow those outlined in Matter of A-B- and thus do not qualify for asylum."[5] The IJ also noted that the petitioner had failed to show either ineffectiveness by the government of El Salvador or that the government condones the activities at issue.

The IJ also denied the withholding of removal claim, which would require meeting a higher bar than the petitioner's asylum claim. As to the CAT claim, the IJ denied relief because the petitioner had not shown that he "would be tortured by anyone in []his home country."

The petitioner appealed to the BIA, arguing through counsel that the IJ had erred (1) because he relied upon a then-vacated Attorney General opinion, Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018) (A-B-I), and (2) in finding that the petitioner had not shown that he was subject to persecution on the basis of membership in a particular social group or political

_____

[5] The Attorney General issued two Matter of A-B- decisions: Matter of A-B-, 27 I. & N. Dec. 316 (A.G. 2018) ("A-B-I") and Matter of A-B-, 28 I. & N. Dec. 199 (A.G. 2021) ("A-B-II"). The IJ cited A-B-I and did not cite A-B-II.

- 7 -

opinion. The petitioner did not challenge the IJ's determination that he failed to establish that the government was unwilling or unable to protect him, nor did he challenge the IJ's denial of his CAT request.[6]

The BIA affirmed: the claimed particular social groups were not legally cognizable because "they [we]re impermissibly circular and too amorphous to be particularly defined." The BIA likewise affirmed the IJ's determination that the petitioner "did not establish that any harm he experienced or fears bears a nexus to an actual or imputed political opinion, or any protected ground." The BIA "discern[ed] no clear error in the [IJ's] findings" "that gang members targeted and harmed the [petitioner] in an attempt to force or coerce him to join the gang[,] . . . that the gangs threatened everyone in the vicinity and everyone knew about them" (citations omitted), and "that the gang perpetrates generalized criminal activity and violence." Citing Matter of S-E-G- and Matter of E-A-G-, the BIA further noted that it could "discern [no record evidence] that reflects that the [petitioner's] opposition to the gang was perceived or imputed by the gang as an anti-gang/anti-government political opinion" and

---

[6] At the conclusion of his brief, the petitioner did "request[] that the Court grant his applications for political asylum, withholding of removal and withholding of removal pursuant to [CAT]." Because the petitioner did not address the issue beyond this cursory request, the BIA correctly deemed the issue waived.

that "[t]he record does not reflect that the [petitioner] had a political motive in resisting gang recruitment and he has not identified any evidence in the record reflecting that he was politically active or made any anti-gang/anti-government political statements[.]"

As to Matter of A-B-, the BIA determined that "[t]he record d[id] not reflect that the [IJ] relied on [A-B-I] in his cognizability analysis," that the IJ's "findings and conclusion [we]re otherwise supported by controlling law and precedent decisions," and that the IJ's "conclusion ha[d] not been meaningfully rebutted on appeal." The BIA concluded that the petitioner had waived both any challenge to the IJ's denial of his CAT request and any argument that the government was unable or unwilling to protect him.

## II.

We review the BIA's conclusions of law de novo. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004). Where the BIA "adopts and affirms the IJ's ruling" and also "'examines some of the IJ's conclusions,' we review both the BIA and IJ opinions as a unit." Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023) (quoting Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020)). We apply the deferential "substantial evidence standard" to the IJ's factual findings, which "requires us to accept the [IJ's] factual findings . . . unless the record is such as to compel a

- 9 -

reasonable factfinder to reach a contrary conclusion." Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022) (emphasis and omission in original) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)); see INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it.").

**III.**

**A.**

In order to succeed on an asylum application, a petitioner "must 'demonstrate a well-founded fear of persecution on one of five protected grounds' -- race, religion, nationality, political opinion or membership in a particular social group." Paiz-Morales v. Lynch, 795 F.3d 238, 243 (1st Cir. 2015) (quoting Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014)); see 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i). A petitioner must demonstrate that one of the five protected grounds is at least "one central reason for the harm alleged." Barnica-Lopez, 59 F.4th at 528 (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 47 (1st Cir. 2021) (internal quotations omitted)); 8 U.S.C. § 1158(b)(1)(B)(i); see Elias-Zacarias, 502 U.S. at 482-83.

Substantial evidence supports the BIA and IJ's determination that the petitioner failed to demonstrate membership in a valid particular social group. An applicant for asylum or withholding of removal based on membership in a particular social

group "must establish that the group is: (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Cruz v. Garland, ___ F.4th ___, No. 23-1910, 2024 WL 3249628, at *1 (1st Cir. July 1, 2024)(quoting Espinoza-Ochoa v. Garland, 89 F.4th 222, 231 (1st Cir. 2023)). A particular social group also "must exist independent of the persecution claimed to have been suffered" in order to be valid. Perez-Rabanales v. Sessions, 881 F.3d 61, 67 (1st Cir. 2018).

The petitioner's first claimed particular social group, a young person who has been beaten and threatened by gangs, was impermissibly circular. As the BIA and IJ correctly held, this claimed particular social group does not exist independently of the alleged persecution: rather, the fact of persecution is what defines it. The BIA and IJ also did not err in concluding that the petitioner's second claimed particular social group, a young individual in the country who has been targeted for gang recruitment, was amorphous. This Court has repeatedly rejected near-identical groups and explained that resisting gang recruitment does not create the kind of defined social group contemplated under the asylum requirements. See, e.g., Larios v. Holder, 608 F.3d 105, 109 (1st Cir. 2010) (determining that claimed particular social group of "youth resistant to gang recruitment" lacked social visibility and was insufficiently particular).

- 11 -

Consistent with this binding precedent, the BIA and IJ did not err in determining that the claimed particular social group is not cognizable.

As to nexus, substantial evidence also supports the IJ's finding that the petitioner was harassed due to the criminal activity and recruitment strategies of the gang, and neither the petitioner's membership in a group nor his political opinion were a central reason the gang harassed him. Indeed, the petitioner testified that the harassment began after the petitioner refused to join the gang and that the gang was threatening "everyone" in the area.

Petitioner argues to the court that the IJ disregarded substantial relevant evidence. The record does not support the argument, and the petitioner does not identify any specific evidence that the IJ allegedly disregarded, let alone evidence that compels contrary conclusions.[7]

We finally reject the petitioner's argument that his case should be remanded based on a June 16, 2021, Order of Attorney General Merrick Garland vacating the previous Attorney General decisions A-B-I and A-B-II. The petitioner misleadingly claims

---

[7] Since the petitioner's asylum claim fails on both of the particular social group and nexus issues, we need not reach the issue of whether the petitioner adequately showed that he either feared government or government-supported action, or that he feared an actor that the government was unable or unwilling to control.

that the IJ found that the nexus and particular social group issues were "foreclosed by [A-B-I]," and that remand would be appropriate. Petitioner's argument mischaracterizes the record. As the BIA correctly determined, the IJ did not rely on A-B-I. A-B-I did not affect the outcome of this case, and remand is unwarranted.

**B.**

We turn next to the petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3). To succeed, the petitioner "must show that, if returned to his homeland, he would more likely than not be subject to persecution on account of a statutorily protected ground." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009). "A petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal." Paiz-Morales, 795 F.3d at 245. Here, petitioner's asylum claim fails, so his withholding of removal claim fails as well.

We turn last to the petitioner's application for protection under CAT. We add that there was no evidence presented here establishing that "more likely than not, []he will be tortured if forced to return to h[is] homeland." Hincapie v. Gonzales, 494 F.3d 213, 220 (1st Cir. 2007); see 8 C.F.R. § 208.16(c)(2). Similarly, the petitioner has waived any CAT claim by failing to challenge the IJ's denial of CAT protection on appeal to the BIA.

For the foregoing reasons, the petition for review of the decision of the BIA is **denied**.